The Honorable Thomas T. Glover
Chapter 11
Hearing Place:  Seattle, Courtroom 7106
Hearing Date:  February 6, 2009, 9:30 a.m.
Response Date:  February 6, 2009

UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re:

WESCOLD, INC.,

                    Debtor.

NO. 08-14902

FINDINGS OF FACT AND CONCLUSIONS
OF LAW RE MOTION TO (1) SELL
SUBSTANTIALLY ALL OF DEBTOR'S
ASSETS, ETC.

THIS MATTER having come before the Court on the Motion to (1) Sell Substantially All of Debtor's Assets to Wescold Acquisition Company, (2) Authorize Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases , (3) Confirm Termination of Hayden Products, LLC Agreement and (4) Extend Time to Assume or Reject Youngren Lease (the "Motion") filed by Wescold, Inc., the debtor and debtor in possession herein (the "Debtor"); the Court having conducted a hearing on the Motion on February 6, 2009 (the "Hearing"); and the Court having granted the Motion pursuant to an order set forth in a separate document; NOW, THEREFORE, the Court hereby finds and concludes as follows:

///

FINDINGS OF FACT AND CONCLUSIONS OF
LAW RE MOTION TO (1) SELL
SUBSTANTIALLY ALL OF DEBTOR'S ASSETS,
ETC.- 1
{00968612.DOC;3}
DWT 3410861v1 0002877-000097

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 ● Fax: 206-587-2308*

1.     The Debtor provided adequate notice of the hearing on the Motion as set forth in the proofs of service on file with the Court (the "Notice").

2.     Any objections to the Motion and the adequacy of the Notice have been either withdrawn, resolved (including the Limited Response of Hayden Products, LLC), or overruled.

3.     The Court considered the Motion, the Declaration of Greg Sangster (the "Sangster Declaration") as Chief Restructuring Officer of the Debtor, the argument of counsel, and the files and records herein.

4.     The Court has jurisdiction to hear and determine the Motion and all related matters pursuant to 28 U.S.C. §§ 1334 and 157.  Venue of this case and proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (D), (M), (N), and (O).  The statutory predicates for the relief granted herein are 11 U.S.C. §§ 105, 363, and 365, as supplemented by Federal Rules of Bankruptcy Procedure 2002, 4001, 6004, 6006, and 9007.

5.     The Acquired Assets (as defined in the Asset Purchase and Sale Agreement and Addendum, the "Agreement", attached hereto as Exhibit A)[1] are to be sold to Buyer.  Buyer is Wescold Acquisition Company, the assignee of Integrated Marine Services, Inc. under the Agreement.

///

---

[1] Capitalized terms used and not defined herein have the meanings set forth in the Motion or the Agreement and are incorporated herein by this reference, unless otherwise set forth herein.

FINDINGS OF FACT AND CONCLUSIONS OF
LAW RE MOTION TO (1) SELL
SUBSTANTIALLY ALL OF DEBTOR'S ASSETS,
ETC.- 2
{00968612.DOC;3}

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

6.      Substantially all of the Acquired Assets that are to be sold to Buyer were the subject of a prior sale order for a purchase price of $265,000, which was entered on January 26, 2009 (as defined in the Motion, the "First Sale Order"). The buyer under that sale, Hayden Products, LLC or assigns, exercised its rights to terminate its Asset Purchase and Sale Agreement, has no further obligation or liability thereunder, and extinguished any rights of such buyer in the Acquired Assets by delivery of a notice to the Debtor on January 29, 2009. Because of such termination, Hayden Products, LLC or assigns, including without limitation Stone Wescold, LLC, are not entitled to use a name resembling Wescold, Inc. or any of the Debtor's trade names. Twenty-four days' notice of the hearing regarding the prior sale was given to all creditors on the mailing matrix. The prior sale provided for an auction process if there were any bidders who wanted to purchase the assets for a price higher than that offered by the buyer under the First Sale Order. No bidders appeared to make bid for the assets to be sold, and therefore no auction was requested or held. This sale is for a price that is at least $35,000 higher than the previous sale.

7.      The Notice of the Motion and of the Hearing thereon was timely and properly given in compliance with 11 U.S.C. §§ 102(1), 363(b) and (f), and 365, Federal Rules of Bankruptcy Procedure 4001, 6004, and 6006, and applicable local Bankruptcy Rules and was reasonable and appropriate under the circumstances. A reasonable opportunity to be heard was afforded to all interested parties and creditors.

FINDINGS OF FACT AND CONCLUSIONS OF
LAW RE MOTION TO (1) SELL
SUBSTANTIALLY ALL OF DEBTOR'S ASSETS,
ETC.- 3
{00968612.DOC;3}
*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

8.     The Debtor has demonstrated that the sale of the Acquired Assets (as set forth in Exhibit A hereto) to the Buyer, pursuant to the Agreement, is based on sound business justifications, and such sale is in the best interests of the Debtor's estate for the reasons set forth in the Motion, the Sangster Declaration, and on the record at the hearing. Failure to approve the Motion will cause irreparable harm to the Debtor, its creditors, and its estate.

9.     The sale of the Acquired Assets pursuant to the Agreement has been proposed and, if consummated, will have been consummated in good faith in accordance with 11 U.S.C. § 363(m). The Buyer is a good faith purchaser and is entitled to the protections afforded under 11 U.S.C. § 363(m). There was no collusion in the Purchase Price and no violation of 11 U.S.C. § 363(n). The Buyer is not an insider or affiliate of the Debtor.

10.     The Debtor has demonstrated sufficient justification to sell the Acquired Assets and to effect the sale other than under a plan of reorganization and pursuant to a disclosure statement. Before and after the Petition Date, the Debtor has been actively attempting to market its assets. Multiple interested parties were identified. The Debtor's management negotiated with numerous prospective purchasers. No other parties were found with the resources to accomplish the Transaction within the time needed. Other than the previous offer, which is terminated, the Buyer is the only prospective purchaser that put together an offer.

11.     The consideration to be received by the Debtor from the Buyer is fair and reasonable, and the sale does not unfairly benefit insiders, a proprietary purchaser, or any

FINDINGS OF FACT AND CONCLUSIONS OF
LAW RE MOTION TO (1) SELL
SUBSTANTIALLY ALL OF DEBTOR'S ASSETS,
ETC.- 4

{00968612.DOC;3}
DWT-234406v1 0098827 000007

*Cairncross & Hempelmann, P.S.*
**Law Offices**
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

creator or class of creditors. The "Purchase Price" as defined in the Agreement shall be $300,000.

12.     Consummation of the Agreement is in the best interests of the Debtor, its estate, all creditors, and other parties in interest.

13.     The Software License and the Wachovia Lease are essential to the value of the Acquired Assets. Executory contracts and expired leases not assumed and assigned to the Buyer will be burdensome to the estate. There is cause for an extension of time to assume or reject the Youngren Lease and for its ultimate rejection as set forth in the order granting the Motion.

14.     Either all entities having an interest in the Acquired Assets have consented to the sale thereof to the Buyer pursuant to 11 U.S.C. § 363(f)(2), or entities not consenting could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest pursuant to 11 U.S.C. § 363(f)(5) and RCW 7.60.260(2). Such consent requires disbursement of (a) $240,000.00 of the Purchase Price to Wells Fargo Bank, N.A., (b) $1,216.86 to King County Treasury in full satisfaction of any personal property tax liens with respect to the Acquired Assets, and (c) the remainder to governmental units and the estate free and clear of any interests of Wells Fargo Bank, N.A. to the Escrow Agent in trust for the benefit of the Debtor's estate subject to further order of this Court, as set forth in the order granting the Motion.

15.     For the avoidance of doubt, Accounts Receivable are not Acquired Assets, and the Debtor is entitled under Section 2.1(a) of the Agreement to retain originals of all books, file, records, list and proprietary information of the Debtor that relate to Accounts Receivable,

FINDINGS OF FACT AND CONCLUSIONS OF
LAW RE MOTION TO (1) SELL
SUBSTANTIALLY ALL OF DEBTOR'S ASSETS,
ETC.- 5

{00968612.DOC;3}
PWJ_134106v13 06/30/08 27890007

*Cairncross & Hempelmann, P.S.*
**Law Offices**
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

provided however, that the Debtor shall supply to Buyer an electronic or paper copy (at Buyer's election) of any such records for which the Debtor retains possession of the originals.

16.     Cairncross & Hempelmann, P.S., the Escrow Agent under the First Sale Order, is authorized to disburse $20,000 from its trust account to Riddell Williams P.S. in full satisfaction and discharge of its duties and as a refund of the Earnest Money under the Asset Purchase Agreement that was approved by the First Sale Order and as a result of its termination.

DATED this 6th day of February, 2009.

Thomas T. Glover
United States Bankruptcy Judge
(Dated as of "Entered on Docket" date above)

Presented by:

CAIRNCROSS & HEMPELMANN, P.S.

/s/ John R. Knapp, Jr.
John R. Knapp, Jr., WSBA No. 29343

Attorneys for Debtor Wescold, Inc.

FINDINGS OF FACT AND CONCLUSIONS OF
LAW RE MOTION TO (1) SELL
SUBSTANTIALLY ALL OF DEBTOR'S ASSETS,
ETC.- 6
{00968612.DOC;3}

*Cairncross & Hempelmann, P.S.*
**Law Offices**
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

## ASSET PURCHASE AND SALE AGREEMENT

THIS ASSET PURCHASE AND SALE AGREEMENT ("Agreement"), dated as of January 30, 2009, is made and entered into by and between INTEGRATED MARINE SYSTEMS, INC., a Washington corporation ("Buyer"), and Wescold, Inc., an Oregon corporation *("Seller")*. Capitalized terms used herein are defined as set forth in Article I.

### RECITALS:

A.  Seller is a debtor in a Chapter 11 Bankruptcy Case 08-14902 (the "Case") pending before the United States Bankruptcy Court for the Western District of Washington (the "Court'); and

B.  Seller is operating its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code; and

C.  Seller has been attempting to sell its assets since before it filed a bankruptcy petition on July 31, 2008 (the "Petition Date") and during the course of this Case; and

D.  Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, on the terms and subject to the conditions set forth in this Agreement, all of the assets of Seller identified in Section 2.1 of this Agreement.

INTENDING TO BE LEGALLY BOUND and, in consideration of the mutual covenants, representations, warranties and agreements and the conditions set forth in this Agreement, Buyer and Seller hereby agree as follows:

### AGREEMENT

### ARTICLE I — DEFINITIONS

As used herein, the following terms shall have the meanings set forth below:

*"Accounts Receivable"* shall mean all money owing to Debtor in respect to services rendered or products sold to customers as of the Closing Date.

*"Acquired Assets"* shall have the meaning set forth in Section 2.1.

*"Assumed Contract(s)"* shall have the meaning set forth in Section 2.1(c).

*"Assumed Liabilities"* shall have the meaning set forth in Section 2.6.

*"Bankruptcy Code"* shall mean Title 11 of the United States Code, Sections 101, *et. seq.*, as amended and in effect on the Petition Date.

Integrated Marine (1-30-09)
DWT 12397412v3 0084287-000007

"*Business Day*" shall mean any day other than Saturday, Sunday, or a day on which banking institutions in Seattle, Washington, are required or authorized to be closed.

"*Buyer*" shall have the meaning set forth in the preamble hereto.

"*Case*" shall have the meaning set forth in Recital A.

"*Cash in Bank*" shall mean all the money actually in all Seller's bank accounts at Closing, plus any deposits made prior to Closing not included in the money actually in the bank accounts, less Outstanding Checks.

"*Closing*" shall have the meaning set forth in Section 5.1.

"*Escrow Agent*" shall be Seller's Bankruptcy counsel, Cairncross & Hempelmann, P.S.

"*Closing Date*" shall have the meaning set forth in Section 5.1.

"*Court*" shall have the meaning set forth in Recital A.

"*Earnest Money*" shall have the meaning set forth in Section 3.1 (a).

"*Encumbrance(s)*" shall mean any Lien, claim, leasehold interest, right of way, option, restriction or other right of any Person of any kind or any nature whatsoever.

"*Excluded Assets*" shall have the meaning set forth in Section 2.2.

"*Governmental Authority*" shall mean any domestic or foreign, federal, state, county, parish, municipal or other local court, agency, department, legislative body, commission, council, board or other administrative of governmental body.

"*Law*" shall mean any statute, law (including common law), rule, regulation, ordinance, order, decree, ruling, authorization, action, restriction, requirement or policy of any Governmental Authority (each as may be in effect from time to time).

"*Liability*" shall mean any debt, liability or obligation, whether accrued, contingent, disputed, undisputed, secured, unsecured, liquidated, unliquidated, matured or unmatured.

"*Lien*" shall mean any lien on, charge against, or interest in property to secure payment or performance of a Liability, whether granted voluntarily or involuntarily, including without limitation, any security interest, pledge, mortgage, deed of trust, deed to secure debt, assignment or other claim or charge, whether or not filed, recorded or otherwise perfected under applicable law (including any conditional sale or other title retention agreement, any lease in the nature thereof, any option or other agreement to sell or give a lien or security interest and any filing of or agreement to file any financing

statement under the Uniform Commercial Code (or equivalent statutes) of any jurisdiction).

"*Order*" shall mean any order, writ, judgment, injunction, decree, determination or award of a Governmental Authority.

"*Outstanding Checks*" means checks issued by Seller after the Petition Date that have not been paid by Seller's bank(s) as of the Closing Date if such checks are in payment of ordinary and necessary expenses of Seller.

"*Person*" shall mean any natural person, corporation, partnership, firm, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization, governmental, or regulatory body or other entity.

"*Petition Date*" shall mean July 31, 2008, the date on which the Case was commenced in the Court.

"*Purchase Price*" shall have the meaning set forth in Section 3.1.

"*Sale Order*" shall mean an Order of the Court which, among other things: (1) determines that this Agreement was proposed and negotiated by Buyer and Seller in good faith and at arm's length and represents the highest and best offer for the Acquired Assets which Seller has received and should be approved; (2) determines that Buyer is a good faith purchaser under Section 363(m) of the Bankruptcy Code and that the provisions of Section 363(n) of the Bankruptcy Code have not been violated; (3) authorizes and directs Seller to sell the Acquired Assets to Buyer pursuant to this Agreement and Section 363 of the Bankruptcy Code, free and clear of all Liens, claims, interests, liabilities and Encumbrances (including any and all "*interests*" in the Acquired Assets within the meaning of Section 363(f) of the Bankruptcy Code and also including any claims, interests or liabilities relating to any collective bargaining agreement(s) or employment or employee benefit agreements); (4) authorizes and directs Seller to execute, deliver, perform under, consummate and implement this Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the foregoing; (5) permanently enjoins each and every holder of a Liability of Seller from commencing, continuing or otherwise pursuing or enforcing any remedy, claim or cause of action against Buyer relative to such Liability; and (6) permanently enjoins Seller, and any party acting on behalf of Seller or Seller's bankruptcy estate, from commencing, continuing or otherwise pursuing or enforcing any remedy, claim or cause of action relative to all claims, known or unknown, Seller or any party acting on behalf of Seller or Seller's bankruptcy estate, may have against Buyer relating to Buyer's, or Buyer's shareholders' relationship or dealings with Seller prior to the Petition Date including without limitation any claims under Bankruptcy Code Sections 544, 547, 548 and 550.

"*Tax or Taxes*" shall mean any income, corporation, gross receipts, profits, gains, capital stock, capital duty, franchise, withholding social security, unemployment, disability, property, wealth, welfare, stamp, excise, occupation, sales, use, value added,

Integrated Marine (1/30/09)                    3
DWT 12397412v3 0084287-000007

Case 08-14902-TTG   Doc 216-2   Filed 02/01/09   Entered 02/01/09 21:39:14   Page 3
Case 08-14902-TTG   Doc 228   Filed 02/10/09   Ent. 02/10/09 08:51:19   Pg. 9 of 40

alternative minimum, estimated or other similar (including any fee, assessment or other charge in the nature of or in lieu of any tax) imposed b) governmental entity (whether national, local, municipal or otherwise) or political subdivision thereof, and any interest, penalties, additions to tax or additional amounts in respect of the foregoing, and including any transferee or secondary liability in respect of any tax (whether imposed by law, contractual agreement or otherwise) and any liability in respect of any tax as a result of being a member of any affiliated, consolidated, combined, unitary or similar group, including any liability for taxes under Treas. Reg. § 1.1502-6 (or any similar provision of state, local or foreign law).

"*Transaction(s)*" shall mean the transfer of the Acquired Assets pursuant to the terms of this Agreement and all ancillary documents and agreements.

"*Work in Progress*" shall mean all goods or contracts which are in the process of manufacture or completion and include projects or work on which Debtor has received orders, receives orders for before the Closing Date, is currently working on, or begins work on prior to the Closing Date, and all work that has been commenced but is not complete. Work in Progress does not include work or projects completed in the ordinary course of Seller's business before the Closing Date.

## ARTICLE II — PURCHASE OF ASSETS

Section 2.1    Purchase of Assets. Subject to the terms and conditions of this Agreement, at the Closing, Seller shall sell, convey, transfer, assign and deliver to Buyer, and Buyer shall purchase, acquire and accept from Seller all of Seller's assets (except to the extent assets in such asset categories listed below qualify as Excluded Assets), as such assets may exist as of the Closing Date (the "*Acquired Assets*"). The Acquired Assets include, but are not limited to:

(a)    the original or a copy of all books, files, records, lists and proprietary information of Seller that relate to the Acquired Assets, *provided that* if Seller provides originals, Seller may keep a copy;

(b)    except as specifically set forth in Section 2.2, all of Seller's personal property including without limitation Work in Progress, Seller's trade name and color scheme, intellectual property, equipment, tools, inventory, raw materials, and all office equipment and supplies;

(c)    all leases and executory contracts identified on Schedule 1, if any ("Assumed Contracts") including all rights and purchase options;

(d)    all other assets of Seller except Excluded Assets as defined in Section 2.2.

Section 2.2    Excluded Assets. It is expressly understood and agreed that the Acquired Assets shall exclude assets specified below (together, the "*Excluded Assets*") and such Excluded Assets shall not be sold, conveyed, transferred, assigned

or delivered to Buyer at the Closing but shall be retained by Seller after the Closing. The Excluded Assets comprise:

(a)     all refunds or credits of any Taxes due to Seller, Seller's net operating losses, and other Tax attributes and benefits of Seller;

(b)     non-assigned and non-assignable rights and contracts and the rights of Seller under this Agreement, and all rights to pursue avoidance actions under Bankruptcy Code Sections 544, 547, 548 and 550;

(c)     that certain equipment known as a New Atom Flashcut 3015 Pneu Knife Cutting System, a Fixed Knife Chuck, and a Milling Chuck Device all of which are the subject of a relief from stay order in favor of Wells Fargo Equipment Finance;

(c)     all leases and executory contracts other than those specifically identified on Schedule 1; and

(d)     all of Seller's Cash in Bank and Accounts Receivable.

Section 2.3     Excluded Liabilities.

(a)     Except as otherwise explicitly stated in this Agreement, Buyer shall not assume or be liable for any obligation including without limitation any obligation for funded debt, intercompany and Tax-related liabilities, or other Liabilities or obligations of Seller, regardless of whether such liability or obligation is matured or unmatured, liquidated or unliquidated, fixed or contingent, and whether known or unknown.

(b)     Buyer shall have no obligations or liabilities relating to Seller's employees, including without limitation any obligation to retain any of Debtor's employees, or any obligations or liabilities related to employee wages, benefits, deductions, termination, or severance, or any obligations or liabilities relating to any collective bargaining agreements, union agreements, benefit agreements, or other agreements with or for the benefit of any employees.

(c)     Notwithstanding anything set forth elsewhere in this Agreement, Buyer does not assume, and in no event shall be obligated to assume any item which constitutes a claim, liability, suit or cause of action against Seller, or which is in dispute or involves a suit, a claim by or before an administrative agency, or other legal proceeding and Buyer does not in any event assume or undertake any obligation to defend Seller in any legal proceeding.

Section 2.4     Taxes.  To the extent the sale of the Acquired Assets and other transactions contemplated hereby are subject under applicable Law to sales, transfer, use, stamp or similar Taxes that are not exempt under the Bankruptcy Code, such Taxes shall be borne by Buyer.  Buyer shall file all required use Tax Returns and remit use Tax to the pertinent state taxing authority for sales, deferred sales and/or use

Integrated Marine (1/30/09)                    5
DWT 12397412v3 0084287-000007

Case 08-14902-TTG   Doc 216-2   Filed 02/01/09   Entered 02/01/09 21:39:14   Page 5
Case 08-14902-TTG   Doc 228   Filed 02/10/09   Ent. 02/10/09 08:51:19   Pg. 11 of 40

Tax owed on this transaction within the period required by Law and provide a copy of the Tax Return to Seller together with a validly executed resale certificate and/or other exemption certificate for any portion of the transaction for which a resale and/or other exemption is claimed. If the pertinent state taxing authority determines that additional sales, deferred sales, and/or use Tax is due on the Transactions contemplated by this Agreement and those Taxes are assessed against Seller, Buyer shall promptly remit to Seller such Taxes.

Section 2.5    Allocation.  The parties covenant and agree that the allocation of the Purchase Price shall be as set forth in *Schedule 2,* which Buyer and Seller shall agree upon on or before Closing.  Seller and Buyer agree to prepare and file all applicable financial reporting and federal, state and local tax returns (including such forms as may be required by applicable regulations) in a manner consistent with the allocation and will not in connection with the filing of such returns make any allocation of the Purchase Price, that is contrary to the allocation.  Seller and Buyer shall consult with each other with respect to all issues related to such allocation in connection with any tax audit and shall not initiate any positions inconsistent with such allocation in any tax audit.  The parties agree to file all applicable foreign and federal income tax and corresponding state and/or local tax forms on a timely basis.

Section 2.6    Assumed Liabilities.  In connection with the sale, transfer, delivery and assignment of the Acquired Assets, from and after Closing, Buyer will assume, pay, perform and discharge when due those liabilities and obligations under and in respect of Assumed Contracts, to the extent such liabilities or obligations arise and accrue from and after the Closing Date ("*Assumed Liabilities*").

### ARTICLE III — CONSIDERATION

Section 3.1    Purchase Price.  In consideration of the sale and transfer of the Acquired Assets, and the representations, warranties and covenants set forth herein and in documents delivered or to be delivered pursuant hereto, the Buyer agrees to pay to Seller at Closing Three Hundred Thousand Dollars ($300,000.00) (the "*Purchase Price*"), in the form and subject to reduction as detailed below.

(a)    At the time of execution of this Agreement, Buyer shall deposit Thirty Thousand Dollars ($30,000) as earnest money ("Earnest Money") with the Escrow Agent.  The Escrow Agent may deposit in trust but shall not disburse the Earnest Money except as provided by this Agreement. **Buyer shall deliver a cashier's check in the amount of the Earnest Money to the Escrow Agent and execute this Agreement by 5:00 PM on January 30, 2009.**

(b)    At Closing, Buyer shall pay the balance of the Purchase Price.

(c)    If Seller is in compliance with this Agreement, and if all of Buyer's conditions to Closing have been met, and if Seller is prepared to close the purchase and sale contemplated by this Agreement, but Buyer without just cause fails to close, Seller shall be entitled to keep the Earnest Money as liquidated

damages. This shall be Seller's only recourse against Buyer for failing to perform under this Agreement. If the purchase and sale of assets contemplated by this Agreement does not close for any reason other than the Buyer's failure to close without just cause, then the Escrow Agent shall immediately return all Earnest Money to Buyer.

## ARTICLE IV ---CONTINGENCIES

Buyer's obligation to perform under this Agreement is subject to the following contingencies:

Section 4.1     Sale Order. The Court entering the Sales Order on or before February 6, 2009, or such later date as the Buyer shall agree, in the Buyer's sole and absolute discretion.

Section 4.2     Buyer having received evidence which, in the Buyer's sole and absolute discretion, is satisfactory to Buyer that any Encumbrances on the Acquired Assets identified by the Buyer (i) have been fully released and terminated or will be fully released and terminated upon or immediately following the Closing or (ii) the holder of any such Encumbrance has agreed to the sale of the Acquired Assets to Buyer free and clear of such holder's Encumbrance.

Section 4.3     Seller's representations and warranties under Article VI hereof remain true and correct as of the Closing Date except to the extent such representation and warranty is made as of a specific date.

If the requirements of the this Article IV are not met, Buyer may terminate this Agreement at Buyer's sole and absolute discretion and Buyer shall have no further obligations or liabilities under this Agreement and the Escrow Agent shall immediately return all Earnest Money to Buyer.

## ARTICLE V — CLOSING

Section 5.1     Closing. The closing of the Transactions contemplated by this Agreement (the "*Closing*") shall occur immediately following the sales Order on February 6, 2009, or such later date as agreed by the Buyer, in its sole and absolute discretion ("*Closing Date*"). The Closing will take place at the offices of Cairncross & Hempelmann, 524 Second Avenue, Suite 500,Seattle, WA 98104

Section 5.2     Seller's Obligations at the Closing. At the Closing, Seller shall deliver to Buyer the following validly executed documents and instruments:

(a)     Bill of Sale for the Acquired Assets in form and substance similar to Exhibit A;

(b)     Possession of the Acquired Assets.

Section 5.3     Buyer's Obligations at the Closing.  At the Closing, Buyer shall deliver to Seller the following items:

(a)     a cashiers check or bank check or wire transfer payable to Escrow Agent for the balance of the Purchase Price after deducting Earnest Money.

(b)     such other instruments or documents necessary or desirable to complete the transaction contemplated herein, all satisfactory in form and substance to Buyer.

## ARTICLE VI — REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Buyer as set forth in this Article VII. Disclosure of an item in response to one Section of this Agreement shall constitute disclosure and response to every other Section of this Agreement even in the absence of a cross-reference; to the extent it is reasonably apparent to a Person in the business. These representations and warranties are true and correct as of the date hereof and as of the Closing Date except to the extent such representation and warranty is made as of a specific date.

Section 6.1     Organization and Qualification.  Seller is a corporation duly organized and validly existing under the laws of the State of Oregon and Seller has all requisite power and authority to own, lease and operate its properties and to carry on its businesses as now being conducted.

Section 6.2     Authority.  Subject to Court approval:  (a) Seller has the right, power and authority to enter into this Agreement and to consummate the sale of the Acquired Assets owned by it and the other transactions contemplated by, and otherwise to comply with and perform its obligations under this Agreement; (b) the execution and delivery by Seller of this Agreement have been duly authorized by all necessary corporate action of Seller in compliance with governing or applicable agreements, instruments or other documents (including its certificate of incorporation and bylaws) and applicable Law; and subject to Court approval, this Agreement constitutes the valid and legal binding obligation of the Seller, enforceable in accordance with its terms and conditions.

Section 6.3     Compliance with Laws and Other Instruments.

(a)     The execution and delivery of this Agreement by Seller and the consummation by Seller of the sale of the Acquired Assets and the other transactions contemplated by, or other compliance with or performance under, this Agreement, do not and will not with the passage of time or giving of notice or both, constitute a violation of, be in conflict with, constitute a default or require any payment under, permit a termination of, require any consent under, or result in the creation or imposition of any lien, Encumbrance or other adverse claim or interest upon any of the Acquired Assets under (i) any contract, agreement,

Integrated Marine (1/30/09)                    8
DWT 12397412v3 0084287-000007

Case 08-14902-TTG   Doc 216-2   Filed 02/01/09   Entered 02/01/09 21:39:14   Page 8
Case 08-14902-TTG   Doc 228   Filed 02/10/09   Ent. 02/10/09 08:51:19   Pg. 14 of 40

license, commitment, undertaking or understanding to which Seller is a party or to which it or any of its respective assets or properties are subject or bound, except for contracts or agreements requiring consents that have been obtained or will have been obtained as of Closing, (ii) any judgment, decree or order of any Governmental Authority to which Seller or any of its respective properties are subject or bound, (iii) any applicable Law, or (iv) any governing or applicable agreements, instruments or other documents (including Seller's articles of incorporation and bylaws).

(b)     No consent, approval, order or authorization of, or registration, declaration or filing with, any Governmental Authority on the part of Seller is required in connection with Seller's execution or delivery of this Agreement or the consummation of the sale of the Acquired Assets and the other transactions contemplated by, or other compliance with or performance under, this Agreement by Seller, except for filings with the Court, including the obtaining of the Sale Order.

Section 6.4      Location and Description of Assets; No Material Misstatements. Seller has fully and accurately described the Acquired Assets in its filings with the Court. Neither this Agreement, any Schedules or Exhibits to this Agreement, nor any of the information provided by Seller referred to herein, taken as a whole, omit a material fact or conceal any untrue statement of a material fact regarding the Acquired Assets or Transaction. By the Closing Date, and as a result of the Sale Order, Seller will have good and marketable title to all of the Acquired Assets and will transfer them to Buyer free and clear of any liens, claims and Encumbrances except as otherwise specifically set forth in this Agreement.

Section 6.5   Litigation. Other than the Case, there is no action, claim, suit, or proceeding presently pending and that has not been stayed by the filing of the Case in any court or before any federal, state, or municipal department, commission, board, bureau or agency, or other governmental instrumentality:  (1) affecting the Acquired Assets, or any portion thereof, or the use, operation, or ownership of the Acquired Assets, or (2) affecting Seller's ability to perform its obligations under this Agreement, nor, to the best of Seller's knowledge, is any such action, proceeding, or claim threatened.

Section 6.6   Brokers and Finders. Seller has not retained any broker, finder, or investment banker in connection with this Agreement or any of the Transactions contemplated by this Agreement, nor does or will Seller owe any fee or other amount to any other broker, finder, or investment banker in connection with this Agreement or the Transactions contemplated by this Agreement.

## ARTICLE VII — BUYER'S REPRESENTATIONS AND WARRANTIES

Buyer hereby represents and warrants to Seller that the following shall be true and correct as of the date hereof and as of the Closing Date:

Integrated Marine (1/30/09)                    9
DWT 12397412v3 0084287-000007

Case 08-14902-TTG   Doc 216-2   Filed 02/01/09   Entered 02/01/09 21:39:14   Page 9
Case 08-14902-TTG   Doc 228   Filed 02/10/09   Ent. 02/10/09 08:51:19   Pg. 15 of 40

Section 7.1     Organization and Qualification.  Buyer is a Washington corporation duly organized and validly existing under the laws of the state of Washington and Buyer has all requisite power and authority to own, lease and operate its properties and to carry on its businesses as now being conducted.

Section 7.2     Authority.  The execution, delivery, and performance of this Agreement by Buyer has been duly authorized by all necessary action by Buyer.  Buyer has the full power and authority to enter into this Agreement and the Transactions contemplated herein.  Buyer has duly and validly executed and delivered this Agreement, and this Agreement constitutes a valid binding, and enforceable obligation of Buyer in accordance with its terms.

Section 7.3     Compliance with Laws and Other Instruments.

(a)     Except as otherwise disclosed in this Agreement, neither the execution and delivery of this Agreement and all other agreements contemplated hereby by Buyer nor the consummation of the Transactions contemplated hereby and thereby is prohibited by any statute, Law, ordinance, regulation, rule, judgment, decree or order of any Governmental Agency or of any other Person.

(b)     No consent by any Governmental Agency or other Person is required by or with respect to Buyer in connection with the execution and delivery of this Agreement and all other agreements contemplated hereby by Buyer or with Seller's execution or delivery of this Agreement or the consummation of the sale of the Acquired Assets and the other transactions contemplated by, or other compliance with or performance under, this Agreement by Seller, except for filings with the Court, including the obtaining of the Sale Order.

Section 7.4     "As-Is" Sale, Limitation, Disclaimer.  Pursuant to this Agreement, Buyer has been or will be afforded the right and opportunity to make such inspections of the Acquired Assets as Buyer desires, subject to the provisions of this Agreement. Buyer acknowledges that, except as set forth in this Agreement, (i) neither the Seller, nor any agent, attorney, employee, broker, or other representative of the Seller has made any representations or warranties of any kind whatsoever regarding condition of the Acquired Assets, either expressed or implied, and (ii) that Buyer is not relying on any warranty, representation, or covenant, expressed or implied, with respect to the condition of the Acquired Assets, except as set forth in this Agreement, and agrees that Buyer is acquiring the Acquired Assets "as-is".  In particular, but without limitation, except as set forth in this Agreement, the Seller makes no representations or warranties with respect to the Acquired Assets' use or condition of any kind or nature, expressed or implied.  Buyer represents that it is knowledgeable in business matters and that upon completion of the inspections contemplated or permitted by this Agreement, Buyer will have made all of the investigations and inspections Buyer deems necessary in connection with the use or condition of the Acquired Assets.

Section 7.5 Brokers and Finders.  Buyer has not retained any broker, finder, or investment banker in connection with this Agreement or any of the Transactions

Case 08-14902-TTG   Doc 216-2   Filed 02/01/09   Entered 02/01/09 21:39:14   Page 10
Case 08-14902-TTG   Doc 228   Filed 02/10/09   Ent. 02/10/09 08:51:19   Pg. 16 of 40

contemplated by this Agreement, nor does or will Buyer owe any fee or other amount to any other broker, finder, or investment banker in connection with this Agreement or the Transactions contemplated by this Agreement.

## ARTICLE VIII — COVENANTS OF SELLER

Section 8.1     Conditions.  Seller shall take all commercially reasonable actions  necessary or desirable to cause the conditions set forth  herein to be satisfied and to consummate the Transactions contemplated herein as soon as reasonably possible after the satisfaction thereof.

Section 8.2     Joint Statement.  If requested by Buyer, Seller will cooperate in issuing a joint statement to suppliers, customers, and such other parties as may be requested by Buyer, advising them of the transfer of the Acquired Assets from Seller to Buyer hereinunder.

Section 8.3     Employees.  Prior to the Closing Date, Seller shall permit Buyer to interview Seller's current employees and determine whether it will offer employment, upon terms and conditions solely determined by Buyer, to any of such employees.  Buyer shall have no obligation to hire any of Seller's employees, representatives, commission sales people, or others, and Seller shall, prior to the Closing, make any necessary or appropriate arrangements as directed by Buyer in connection with the termination of any relationship with such Persons or such employees and shall otherwise aid in the transition of any retained employees from Seller to Buyer.  Nothing in this Agreement shall be construed to impose any obligation or liability on Buyer with regard to any collective bargaining agreements or other agreements relating to Seller's employees.

Section 8.4     Access and Cooperation.  Seller shall provide Buyer with reasonable access to such documents, books, records, agreements, and financial data of Seller as Buyer may consider necessary, and Buyer may make copies thereof.

## ARTICLE IX — TERMINATION

Section 9.1     Termination.  This Agreement may be terminated at any time prior to the Closing :

(a)     by mutual written consent of Seller and Buyer; or

(b)     at the option of Buyer, pursuant to the provisions of Article IV hereof.

## ARTICLE X — MISCELLANEOUS

Section 10.1     Transactional Expenses. Seller and Buyer shall pay their own fees and expenses incident to the negotiation, preparation, execution, delivery and performance hereof, including the fees and expenses of its counsel, accountants and other experts.

Integrated Marine (1/30/09)          11
DWT 12397412v3 0084287-000007

Section 10.2    Notices. All notices, demands and other communications to be given or delivered under or by reason of the provisions of this Agreement will be in writing and will be deemed to have been given when personally delivered; or three Business Days after being mailed by first class U.S. mail, return receipt requested; or, if sent by facsimile, telecopy or other electronic transmission device, when receipt is acknowledged. Notices, demands and communications to Buyer and Seller will, unless another address is specified in writing, be sent to the address indicated below:

Notices to Buyer:

Integrated Marine Systems, Inc
c/o Mark Burn
President
1575 Tyler Street
Port Townsend, WA 98638

Notices to Seller:

Wescold, Inc.
Attn: Greg Sangster

4220 22nd Avenue West

Seattle, WA 98199
Fax 206-284-1054

With a copy to:

William Weigand
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Fax: (206) 757-7164

With a copy to:

John Knapp
Cairncross & Hempelmann
524 Second Avenue, Suite 500
Seattle, WA 98104
Fax: (206) 587-2308  and to

Shaun Watchie Perry, Special
Counsel;  P.O. Box 15239;  Seattle,
WA 98115;    Fax: 206-260-1411

Section 10.3    Additional Agreements and Best Efforts. If at any time after the Closing Date any further order or agreement is reasonably necessary or desirable to carry out the purposes of this Agreement or to vest Buyer with free and clear title to the Acquired Assets, each of the parties to this Agreement agrees to take all action reasonably necessary to carry out such purposes or to vest title, including but not

Integrated Marine (1/30/09)                    12
DWT 12397412v3 0084287-000007

limited to the Seller, at Buyer's request and at Seller's expense, to seek to avoid under Bankruptcy Code Sections 544, 547, 548 and 550 any Encumbrance on the Acquired Assets. Buyer and Seller further agree to use their best efforts to obtain Court Orders or take other necessary steps to consummate the Transactions contained in this Agreement.

Section 10.4    Assignment. This Agreement and all of the provisions hereof will be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, including without limitation any Chapter 7 trustee.

Section 10.5    Severability. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable Law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable Law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

Section 10.6    Entire Agreement; Waivers and Amendments. This Agreement, together with the exhibits and schedules hereto, constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior agreements or understandings, written or oral, if any, of Seller and Buyer relating to any form of acquisition of Seller or its business. This Agreement may be amended or supplemented only by a written instrument signed by the party against whom the amendment or supplement is sought to be enforced. The party benefited by any condition or obligation may waive the same, but such waiver shall not be enforceable by another party unless made by written instrument signed by the waiving party.

Section 10.7    Counterparts; Facsimile Signatures. This Agreement may be executed in any number of counterparts and all counterparts shall be deemed to constitute a single agreement. The execution of one counterpart by any party shall have the same force and effect as if that party had signed all other counterparts. The signatures to this Agreement may be executed on separate pages and when attached to this Agreement shall constitute one complete document. This Agreement may be signed by facsimile, and each facsimile copy so signed shall be deemed an original hereof.

Section 10.8    Governing Law. The internal law, without regard to conflicts of laws principles, of the State of Washington, and, to the extent applicable, the Bankruptcy Code, will govern all questions concerning the construction, validity and interpretation of this Agreement and the performance of the obligations imposed by this Agreement.

Section 10.9    Announcements. The parties shall consult with each other before issuing any press release or otherwise making any public statements, including statements to Seller's customers, with respect to the Transactions contemplated by this Agreement and shall not issue any such press release or make any such public

Case 08-14902-TTG   Doc 216-2    Filed 02/01/09   Entered 02/01/09 21:39:14   Page 13
Case 08-14902-TTG   Doc 228    Filed 02/10/09   Ent. 02/10/09 08:51:19   Pg. 19 of 40

statement prior to such consultation, except as may be required by applicable law, or by fiduciary duties.

Section 10.10 <u>Survival</u>. Except as otherwise provided herein, the representations and warranties in this Agreement shall not survive subsequent to the Closing Date.

Section 10.11 <u>Headings</u>. The section headings contained in this Agreement are inserted for convenience only and shall not effect in any way the meaning or interpretation of this Agreement.

Section 10.12 <u>Construction</u>. The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. The word "including" shall mean including without limitation. The parties intend that each representation, warranty, and covenant contained herein shall have independent significance. If any party has breached any representation, warranty, or covenant contained herein in any respect, the fact that there exists another representation, warranty, or covenant relating to the same subject matter (regardless of the relative levels of specificity) which the party has not breached shall not detract from or mitigate the fact that the party is in breach of the first representation, warranty, or covenant.

Section 10.13 <u>Incorporation of Exhibits and Schedules</u>. The Exhibits and Schedules identified in this Agreement are incorporated herein by reference and made a part hereof.

*[**signature page follows**]*

Integrated Marine (1/30/09)    14
DWT 12397412v3 0084287-000007

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate by their authorized representatives as of the day and year first written above.

**BUYER:**

**SELLER:**

Integrated Marine Systems, Inc., a
Washington Corporation

Wescold, Inc., an Oregon corporation

By:_____

By:_____

Name: Mark Burn

Name:_____

Title: President

Title:_____

Date:_____

Date:_____

**ESCROW AGENT**

Cairncross & Hempelmann, P.S. agrees to act as Escrow Agent in accordance with the terms of this Agreement and to be bound by provisions of this Agreement relating to Escrow Agent.

By:_____

Name:_____

Title:_____

Date:_____

Integrated Marine (1/30/09)                    15
DWT 12397412v3 0084287-000007

Case 08-14902-TTG    Doc 216-2    Filed 02/01/09    Entered 02/01/09 21:39:14    Page 15
Case 08-14902-TTG    Doc 228    Filed 02/10/09    Ent. 02/10/09 08:51:19    Pg. 21 of 40

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate by their authorized representatives as of the day and year first written above.

**BUYER:**

Integrated Marine Systems, Inc., a
Washington Corporation

By: _____

Name: Mark Burn

Title: President

Date: _01 - 30 - 09_

**SELLER:**

Wescold, Inc., an Oregon corporation

By:_____

Name:_____

Title:_____

Date:_____

**ESCROW AGENT**

Cairncross & Hempelmann, P.S. agrees to act as Escrow Agent in accordance with the terms of this Agreement and to be bound by provisions of this Agreement relating to Escrow Agent.

By:_____

Name:_____

Title:_____

Date:_____

Integrated Marine (1/30/09)                    15

DWT 12297413-3 0084287 000007

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate by their authorized representatives as of the day and year first written above.

**BUYER:**

Integrated Marine Systems, Inc., a Washington Corporation

By:_____

Name: Mark Blum

Title: President

Date:_____

**SELLER:**

Wescold, Inc., an Oregon corporation

By: _Greg Sangster_

Name: _GREG SANGSTER_

Title: _CEO_

Date: _01 - 30 - 09_

**ESCROW AGENT**

Cairncross & Hembelmann, P.S. agrees to act as Escrow Agent in accordance with the terms of this Agreement and to be bound by provisions of this Agreement relating to Escrow Agent.

By:_____

Name:_____

Title:_____

Date:_____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate by their authorized representatives as of the day and year first written above.

**BUYER:**

Integrated Marine Systems, Inc., a Washington Corporation

By:_____

Name: Mark Burn

Title: President

Date:_____

**SELLER:**

Wescold, Inc., an Oregon corporation

By:_____

Name:_____

Title:_____

Date:_____

**ESCROW AGENT**

Cairncross & Hempelmann, P.S. agrees to act as Escrow Agent in accordance with the terms of this Agreement and to be bound by provisions of this Agreement relating to Escrow Agent.

By: _John R. Knapp_

Name: _John R. Knapp, Jr._

Title: _Principal_

Date: _1-30-2009_

Integrated Marine (1/30/09)
DWT 12397412v3 0084287-000007

15

# BILL OF SALE

FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Wescold, Inc., ("**Seller**"), as Debtor and debtor-in-possession, in the bankruptcy case now pending before the United States Bankruptcy Court for the Western District of Washington, under Case No. 08-14902, does hereby give, grant, bargain, sell, transfer, assign, convey and deliver to Wescold Acquisition Company (assignee of Integrated Marine Systems, Inc.) ("**Buyer**"), pursuant to that certain Asset Purchase and Sale Agreement (the "**Agreement**"), dated January 30, 2009, all of Seller's assets (except to the extent such assets are Excluded Assets as set forth on Schedule 4) as such assets may exist as of the date hereof (the "**Acquired Assets**"), including but not limited to:

(a)     the original or a copy of all books, files, records, lists and proprietary information of Seller that relate to the Acquired Assets;

(b)     all of Seller's personal property including without limitation Work in Progress, equipment, tools, inventory, raw materials, and all office equipment and supplies, wherever located;

(c)     the leases and executory contracts specifically identified on Schedule 1 attached hereto ("**Assumed Contracts**") including all rights and purchase options;

(d)     all intangible assets, rights and claims of every kind and nature, owned, used or held for use in connection with the operation of the Seller's business and all goodwill associated therewith, including but not limited to all intellectual property set forth on Schedule 2 attached hereto as well as all:

(i)     patents and patent applications, wherever filed and wherever issued, including without limitation, continuations, substitutes and divisions, reissues and extensions of such applications and all priority rights resulting from such applications and rights in any inventions, whether or not patented, patent pending or patentable, throughout the world;

(ii)     copyrights, copyright applications, copyright registrations, whenever filed and wherever issued, and rights associated with works of authorship, throughout the world and in all media and formats known or hereinafter invented, including without limitation, renewals or restored copyrights;

(iii)     trademarks, service marks, collective marks, certification marks, trade names, trade dress, throughout the world, and all applications or registrations for any of the foregoing and all divisions and renewals thereof, and all goodwill symbolized thereby and associated therewith;

(iv)    trade secrets and rights in  customer lists, files, formulations, know-how, designs, plans, strategies, processes, inventions, methodologies and technology of any nature, and other confidential or proprietary information and intangibles throughout the world, in whatever stage of design, development or completion as may exist;

(v)    telephone and facsimile numbers, websites (including the contents therein, that are used in the conduct of the business of Seller, including, but not limited to, any and all HTML pages, XML pages, images, graphics, multimedia files, software computer code or scripts in any programming language, both in object code and source code form, whether original code or derivative works of other code, data or documentation), domain names, email addresses; and

(vi)    records, files and documentation of any of the foregoing and sales, marketing or other materials related to any of the foregoing, including without limitation, purchasing records, applications, registration certificates and any related correspondence or prosecution materials, technical, administrative and user documentation, specifications, training materials, charts, sales brochures, marketing materials, and other like material and documentation; and

(e)    all other assets of Seller, including without limitation the assets listed on Schedule 3 hereto.

TO HAVE AND TO HOLD such Acquired Assets hereby conveyed unto Buyer and its successors and assigns to and for its or their use forever.  Seller hereby constitutes and appoints Buyer, its successors and assigns, as Seller's true and lawful attorney and attorneys, with full power of substitution, in Seller's name and stead, by, on behalf of and for the benefit of Buyer, its successors and assigns, to demand and receive any and all of the Acquired Assets transferred hereunder and to give receipts and releases for and in respect of the same, and any part thereof, and from time to time to institute and prosecute in Seller's name, or otherwise, any and all proceedings at law, in equity or otherwise, which Buyer, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Acquired Assets transferred hereunder or for the collection and enforcement of any claim or right of any kind hereby sold, conveyed, transferred, assigned and delivered, or intended so to be, and to do all acts and the things in relation to the Acquired Assets transferred hereunder which Buyer, its successors or assigns, shall deem desirable, Seller hereby declaring that the foregoing powers are coupled with an interest and are and shall be irrevocable by Seller in any manner or for any reason whatsoever.

Capitalized terms not otherwise defined herein shall have the respective meanings set forth in the Agreement. Nothing contained in this Bill of Sale shall be deemed to supersede or change any of the obligations, agreements, provisions, covenants, warranties or representations of Buyer or Seller in the Agreement.

This Bill of Sale and the rights of the parties under it will be governed by and construed in all respects in accordance with the laws of the State of Washington, without regard to the conflicts of laws principles of such state.

This sale and conveyance is made pursuant to that certain Order Granting Motion of the Bankruptcy Court, entered February _____, 2009 approving the Agreement and authorizing the transactions thereunder, attached hereto as Exhibit A.

Dated as of February _____, 2009.

**WESCOLD, INC.**


By: _____

Its: _____

## Schedule 1
## Assumed Contracts

Viewpoint Construction Software Purchase and License Agreement, dated May 4, 2004.

Wachovia Financial Services, Inc. Lease Agreement, dated December 29, 2006.

## Schedule 2
## Intellectual Property

1.  The following trade names along with any derivations thereof:

    Wescold, Inc.

    W.E. Stone & Company

    Wescold Engineered Products

    Western Engineers, Inc.

2.  The following trademark registrations:

| TRADEMARK | REG. NO. | REG. DATE | DESCRIPTION OF GOODS | OWNER | STATUS |
|---|---|---|---|---|---|
| DURO SCREW | 1,571,573 | December 19, 1989 | Compressors for refrigeration systems in Class 7 | Wescold, Inc. | REGISTERED<br><br>Renewal due December 19, 2009. |
| WESCOLD | 793,346 | July 27, 1965 | Refrigeration equipment – namely, evaporative condensers, brine spray unit coolers, water defrost unit coolers, hot gas defrost unit coolers, brewery unit coolers, freezing tunnels, portable sea water chilling plants in Class 31 | Wescold, Inc. | REGISTERED<br><br>Renewal due July 27, 2015. |
| PORT-A-CHILLER | 670,601 | December 2, 1958 | Pumping and refrigerating unit for cooling and circulating liquids, particularly sea water for fish storage tanks in Class 31 | Wescold, Inc. | REGISTERED<br><br>Renewal due December 2, 2018. |

<u>Schedule 3</u>
<u>Other Assets</u>

**Vehicles:**

| | | |
|---|---|---|
| 1 | Ea. | 1983 Ford Flatbed Pickup Truck |
| | | 2FDJF37G9DCH09622 |
| | | A320455U |
| 1 | Ea. | 1997 Ford Pickup Truck |
| | | 3FTHF25H2VMA18693 |
| | | A57741Y |
| 1 | Ea. | 1997 Ford Pickup Truck |
| | | 3FTHF25G9VMA47096 |
| | | A14320Z |
| 1 | Ea. | 1997 Ford Pickup Truck |
| | | 1FTHF25G9VEB94542 |
| | | A14319Z |
| 1 | Ea. | 1999 Ford Pickup Truck |
| | | 1FTNF20LXXEA92192 |
| | | B62601A |
| 1 | Ea. | 2002 Ford Pickup Truck |
| | | 1FTNX21L62EA91903 |
| | | A306081 |
| 1 | Ea. | 2003 Ford E350 Cargo Econoline Van |
| | | 1FTSE34L73HA078957 |
| | | A05661P |
| 1 | Ea. | 1997 Ford Pickup Truck |
| | | 3FTHF25H4VMA04651 |
| | | A421815 |
| 1 | Ea. | 1999 Ford Pickup Truck |
| | | 1FTNF20L0XEA23320 |
| | | MR FRZE |
| 1 | Ea. | 1999 Ford Pickup Truck |
| | | 1FTNF21L1XED14214 |
| | | 2KUUL |
| 1 | Ea. | 2004 Ford Pickup Truck |
| | | 1FTNF20L84EB77267 |
| | | A02526V |
| 1 | Ea. | 2000 Ford E350 Cargo Econoline Van |
| | | 1FTNE24L6YHB76278 |
| | | ZCV766 |

**Machinery & Tools:**

| | | |
|---|---|---|
| 2 | Set. | Tank Rollers |
| 1 | Ea. | Pipe & Tube Bender |
| 1 | Ea. | Punch Press |
| 1 | Ea. | Pipe Finning Machine |
| 5 | Ea. | Bridge Crane |
| 5 | Ea. | Crane Hoist |
| 1 | Ea. | Stand-Alone Band Saw |

| 29 | Ea. | Welding Machines |
|----|-----|------------------|
| 1 | Ea. | Power Gap Shear |
| 1 | Ea. | Power Press Brake |
| 1 | Ea. | Power Press Brake Dies |
| 1 | Ea. | Pipe Annealing Machine |
| 2 | Ea. | Pipe Threading Machine |
| 2 | Ea. | Powered Pipe Threading Machine |
| 1 | Ea. | Elliott Tool Tube Roller |
| 1 | Ea. | Elliott Tool Tube Roller Electric Torque Controller |
| 1 | Ea. | Print Machine |
| 1 | Ea. | Ingersoll-Rand 7D-3A Air Compressor |
| 1 | Ea. | 200 Amp AC/DC Power Rectifier |
| 1 | Ea. | Jib Boom |
| 1 | Ea. | Shear Knives |
| 1 | Ea. | Drilling & Tapping Machinery |
| 1 | Ea. | Stationary Pipe Bender |
| 1 | Ea. | Portable Tube & Pipe Bender |
| 1 | Ea. | Pallet Rack & Bins |
| 1 | Ea. | Panel Saw |
| 1 | Ea. | NH3 Reclaim Unit |
| 1 | Ea. | Laser Alignment Tool |
| 1 | Ea. | Kinney Industrial Vacuum Pump |
| 1 | Ea. | Toyota 5 Ton Forklift |
| 1 | Ea. | Inventory Shelving |
| 1 | Ea. | Vacuum Heaters |
| 1 | Lot. | Miscellaneous equipment |
| 1 | Lot. | Compressor Rebuild Tools |
| 1 | Lot. | Hand Tools |

**Office Equipment:**

| 1 | Ea. | CAD Drawing Copier |
|----|-----|------------------|
| 1 | Ea. | Cannon CAD Plotter |
| 1 | Ea. | Firewall for Computer System |
| 4 | Ea. | Laptop Computer |
| 12 | Ea. | Desktop Computer |
| 1 | Ea. | Server Computer |
| 5 | Ea. | Miscellaneous printer/copier/multifunction devices |
| 1 | Lot. | Miscellaneous Desks, Chairs, & Tables |
| 1 | Ea. | 40' Trailer |
| 1 | Ea. | Wells Cargo Trailer |
| 1 | Ea. | Wilson Jones Model 3000 Paper Shredder |
| 1 | Lot. | Cellular Telephones. |

## Schedule 4
## Excluded Assets

The Excluded Assets are:

(a)     all refunds or credits of any Taxes due to Seller, Seller's net operating losses, and other Tax attributes and benefits of Seller;

(b)     non-assigned and non-assignable rights and contracts and the rights of Seller under this Agreement, and all rights to pursue avoidance actions under Bankruptcy Code Sections 544, 547, 548 and 550;

(c)     that certain equipment known as a New Atom Flashcut 3015 Pneu Knife Cutting System, a Fixed Knife Chuck, and a Milling Chuck Device all of which are the subject of a relief from stay order in favor of Wells Fargo Equipment Finance;

(d)     all leases and executory contracts other than those specifically identified on Schedule 1; and

(e)     all of Seller's Cash in Bank and Accounts Receivable.

## **EXHIBIT A**

Order Granting Motion of the Bankruptcy Court

[attached]

**Schedule 2 to Asset Purchase and Sale Agreement**
**Allocation of Purchase Price**

The Purchase Price of the Acquired Assets shall be allocated as follows:

| | |
|---|---|
| Equipment: | $_____ |
| Work in Progress: | $_____ |
| Office Equipment, Furnishings and Supplies: | $_____ |
| Intellectual Property | $_____ |
| Goodwill and Other Intangibles | $_____ |

Integrated Marine (1-30-09)
DWT 12397412v3 0084287-000007

Case 08-14902-TTG   Doc 216-2   Filed 02/01/09   Entered 02/01/09 21:39:14   Page 21
Case 08-14902-TTG   Doc 228   Filed 02/10/09   Ent. 02/10/09 08:51:19   Pg. 34 of 40

# ADDENDUM TO THE ASSET PURCHASE AND SALE AGREEMENT

This Addendum to the Asset Purchase and Sale Agreement (this "Addendum"), dated as of February 6, 2009, is by and among INTEGRATED MARINE SYSTEMS, INC., a Washington corporation ("Buyer"), WESCOLD ACQUISITION COMPANY, a Washington Corporation ("Assignee"), and WESCOLD, INC., an Oregon corporation ("Seller"), and amends and supplements that certain Asset Purchase and Sale Agreement, dated January 30, 2009 (the "Agreement"), between Buyer and Seller. All capitalized terms not defined herein shall have the meaning ascribed to such term in the Agreement.

## BACKGROUND:

A.     Buyer and Seller are parties to that certain Agreement which relates to the acquisition by Buyer of substantially all of the assets of Seller.

B.     Buyer wishes to assign all of its rights and obligations under the Agreement to Assignee, and desires to obtain the consent and acknowledgement of Seller therefore.

C.     To facilitate the consummation of the transactions contemplated by the Agreement, Buyer, Seller and Assignee desire to further amend and supplement the Agreement pursuant to the terms and conditions set forth in this Addendum.

## AGREEMENT:

NOW THEREFORE, in consideration of the promises, representations, warranties and conditions set forth herein, Buyer, Seller and Assignee agree as follows:

**1.     Purpose**. The purpose of this Addendum is to amend and supplement the terms and conditions set forth in the Agreement by incorporating the additional provisions set forth below.

**2.     Consent to Assignment to Wescold Acquisition Company**.  Seller hereby agrees and consents to Buyer's assignment of all its rights, benefits, interests, and obligations under the Agreement to Assignee.  From and after the date hereof, Seller shall accept performance of all of Buyer's obligations due under the Agreement directly from Assignee. Seller, Buyer and Assignee all agree that all references in the Agreement to "Integrated Marine Systems, Inc." and "Buyer" shall be interpreted to refer to Assignee.

**3.     Name Change**.  Seller understands that, subsequent to the Closing, Buyer and/or Assignee may use the names "Wescold," "W.E. Stone," "Wescold Engineered Products," and "Western Engineers"(collectively, the "Acquired Tradenames") and that such Acquired Tradenames and any and all derivations thereof and any other business names under which Seller currently operates or has operated in the past are included in the Acquired Assets. Within five (5) business days following the Closing, Seller shall change its name from "Wescold, Inc." to a name that is not confusingly similar to any of the Acquired Tradenames. Seller may use, and

1

Assignee hereby grants Seller a license to use, the name "Wescold" (i) in connection with the Case and (ii) during the Case, in connection with any assets of Seller that are not Acquired Assets.

4. **Further Assurances.** The parties hereto each shall utilize reasonable efforts and take such further action and execute such further applications, documents, assurances and certificates as either party may reasonably request of the other in order to effectuate the purposes of the Agreement and this Addendum. Without limiting the generality of the foregoing, Seller agrees that upon request of Buyer or Assignee, at any time and from time to time, Seller will do, execute, acknowledge and deliver, or will cause to be done, executed, acknowledged and delivered, all such further acts, deeds, assignments, transfers, conveyances and assurances as may be reasonably required to evidence further the assignment, transfer, conveyance and delivery of the Acquired Assets to Assignee.

5. **Counterparts.** This Agreement may be executed and delivered (including by facsimile transmission) in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

6. **Conflict**. To the extent there is a conflict between the terms and provisions of this Addendum and the Agreement, the terms and provisions of this Addendum will govern.

7. **No Further Amendment**. Except as expressly modified by this Addendum, the Agreement shall remain unmodified and in full force and effect. Seller and Assignee hereby ratify their respective obligations thereunder.

IN WITNESS WHEREOF, the parties hereto have executed this Addendum dated as of the date first set forth above.

**BUYER:**                                          **SELLER:**

**INTEGRATED MARINE SYSTEMS, INC.**                 **WESCOLD, INC.**

By:_____                        By:_____
Name: Mark Burn                                     Name:_____
Title: President                                    Title:_____

**ASSIGNEE:**

**WESCOLD ACQUISITION COMPANY**

By:_____
Name: Mark Burn
Title: President

DWT 12423769v1 0084287-000007

# ASSIGNMENT OF INTELLECTUAL PROPERTY

This ASSIGNMENT OF INTELLECTUAL PROPERTY (this "Assignment of Intellectual Property") is executed and delivered as of the ___ day of February 2009, by WESCOLD, INC., an Oregon corporation, whose address is 4220 22nd Avenue West, Seattle, Washington 98199 ("Assignor"), in favor of WESCOLD ACQUISITION COMPANY (assignee of Integrated Marine Systems, Inc.), whose address is 775 Haines Place, P.O. Box 2028, Port Townsend, Washington 98638 ("Assignee"), pursuant to that certain Asset Purchase and Sale Agreement, dated as of January 30, 2009, between Assignor and Assignee (the "Purchase Agreement"). Pursuant to the Purchase Agreement, Assignee is acquiring substantially all of the assets owned by Assignor in connection with its business. Capitalized terms not otherwise defined herein shall have the respective meanings set forth in the Purchase Agreement.

WHEREAS, Assignor is the owner of the trademarks and the corresponding registrations and applications therefor listed on Schedule 1 which is attached hereto and incorporated by this reference;

WHEREAS, Assignee wishes to acquire said trademarks and the corresponding registrations and applications;

NOW, THEREFORE, for good and valuable consideration, in accordance with Purchase Agreement and that certain Sale Order entered by the U.S. Bankruptcy Court for the Western District of Washington at Seattle, Chapter 11 Case No. 08-14902, on February ___, 2009, Assignor does hereby assign to Assignee all right, title and interest in and to said trademarks and the corresponding registrations and applications, together with the goodwill associated therewith, and to all income, royalties, damages, claims and payments now or hereafter due or payable with respect thereto, and in and to all causes of action in law or in equity for past, present or future infringement of said trademarks and the corresponding registrations and applications, and to all rights corresponding to the foregoing throughout the world, free and clear of all liens and encumbrances pursuant to Section 363 of the Bankruptcy Code, with all such liens and encumbrances attaching to the sale proceeds.

Assignor shall execute and deliver to Assignee such other instruments of transfer and to do all such other acts and things as shall be reasonably necessary or appropriate to vest in Assignee title to said trademarks and the corresponding registrations and applications, to secure and preserve Assignee's rights hereunder, or to enforce, defend or confirm Assignee's right to exploit those rights, and to comply with the purposes and intent of this Assignment of Intellectual Property. Assignee hereby appoints Davis Wright Tremaine LLP, to file this Assignment of Intellectual Property and to transact all business in the United States Patent and Trademark Office in connection with this Assignment of Intellectual Property.

*[Signature pages follow]*

IN WITNESS WHEREOF, the parties hereto have caused this Assignment of Intellectual Property to be executed as of the date first written above.

**WESCOLD, INC.**

By:_____

Name:_____

Title:_____

STATE OF _____        )
                                 ) ss.
COUNTY OF _____            )

On this _____ day of February, 2009, before me, a Notary Public in and for the State of _____, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who executed this instrument, on oath stated that he was authorized to execute the instrument, and acknowledged it as the _____ of WESCOLD, INC. to be the free and voluntary act and deed of said company for the uses and purposes mentioned in the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal the day and year first above written.

_____

NOTARY PUBLIC in and for the State of _____, residing at _____

My appointment expires _____

Print Name _____

*[Assignee signature page follows]*

Acknowledged by:

**WESCOLD ACQUISITION COMPANY**

By:_____
Name: Mark Burn
Title: President


STATE OF _____    )
                             ) ss.
COUNTY OF _____        )


On this _____ day of February, 2009, before me, a Notary Public in and for the State of _____, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who executed this instrument, on oath stated that he was authorized to execute the instrument, and acknowledged it as the _____ of WESTCOLD ACQUISITION COMPANY to be the free and voluntary act and deed of said limited liability company for the uses and purposes mentioned in the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal the day and year first above written.


_____
NOTARY PUBLIC in and for the State of
_____, residing at _____
My appointment expires _____
Print Name _____

# SCHEDULE 1 TO
## ASSIGNMENT OF INTELLECTUAL PROPERTY

| TRADEMARK | REG. NO. | REG. DATE | DESCRIPTION OF GOODS | OWNER | STATUS |
|---|---|---|---|---|---|
| DURO SCREW | 1,571,573 | December 19, 1989 | Compressors for refrigeration systems in Class 7 | Wescold, Inc. | REGISTERED<br><br>Renewal due December 19, 2009. |
| WESCOLD | 793,346 | July 27, 1965 | Refrigeration equipment – namely, evaporative condensers, brine spray unit coolers, water defrost unit coolers, hot gas defrost unit coolers, brewery unit coolers, freezing tunnels, portable sea water chilling plants in Class 31 | Wescold, Inc. | REGISTERED<br><br>Renewal due July 27, 2015. |
| PORT-A-CHILLER | 670,601 | December 2, 1958 | Pumping and refrigerating unit for cooling and circulating liquids, particularly sea water for fish storage tanks in Class 31 | Wescold, Inc. | REGISTERED<br><br>Renewal due December 2, 2018. |